UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

HILLIARD ENERGY, LTD.,                                          Docket No.:

                                        Plaintiff,

                -against-

TRISHE RESOURCES, INC., TRISHE WIND                  **COMPLAINT**
MINNESOTA, LLC., TRISHE WIND COLORADO,
LLC, CITIBANK N.A., and PUNJAB NATIONAL BANK
(INTERNATIONAL) LTD.,

                                        Defendants.

-----------------------------------------------------------------------X

COMES NOW Plaintiff, HILLIARD ENERGY, LTD., by and through counsel, A.
MANNY ALICANDRO, ESQ. and ELIO FORCINA, ESQ, *of counsel* to the aforementioned
attorney, complains of the Defendants, TRISHE RESOURCES INC., TRISHE WIND
MINNESOTA, LLC., TRISHE WIND COLORADO, LLC., CITIBANK N.A, and PUNJAB
NATIONAL BANK (INTERNATIONAL) LTD. as follows:

## NATURE OF THE ACTION

1. This is an action against TRISHE RESOURCES, INC., TRISHE WIND MINNESOTA,
LLC. TRISHE WIND COLORADO and their subsidiaries, principals, and agents for the failure
to honor a series of agreements effective August 22, 2014, and onward. The Defendants owe the
Plaintiff $2,114,190.00 in unpaid consulting services fees, and contractual obligations. PUNJAB
NATIONAL BANK (INTERNATIONAL) LTD. is the guarantor for specified debts accumulated
by the Defendant and their respective subsidiaries. The Plaintiff has not received financial
compensation from the Defendant for services and fees rendered.   The Plaintiff has fulfilled every
obligation as required per every agreement detailed herein and has not breached any of the
agreements to which it is a party. Thus, HILLIARD ENERGY LTD. has suffered financial

damages due to the collective actions of Defendants TRISHE RESOURCES, INC., its subsidiaries, and PUNJAB NATIONAL BANK (INTERNATIONAL) LTD. and deserves compensation. CITIBANK N.A. maintains the bank account managed by PUNJAB NATIONAL BANK (INTERNATIONAL) LTD. for the beneficiary, TRISHE RESOURCES, INC.

## THE PARTIES

2. Plaintiff HILLIARD ENERGY, LTD. ("Hilliard") is a limited partnership formed under the laws of the State of Texas with a principal office of 3001 West Loop 250 North, Suite E-103, Midland, Texas 79707.

3. Defendant TRISHE RESOURCES, INC. ("TRI") is a corporation formed under the laws of the State of Delaware whose registered office is at 1675 South State Street, Suite B, Dover Delaware, USA 19901.

4. Defendant TRISHE WIND MINNESOTA, LLC ("TWM") is a limited liability company and subsidiary of TRI formed under the laws of the State of Minnesota who may be served with Citation by serving its registered agent, INCORP SERVICES, INC. at 901 Marquette Avenue, Suite 1675, Minneapolis, MN 55402.

5. Defendant TRISHE WIND COLORADO, LLC ("TWC") is a limited liability company and subsidiary of TRI formed under the laws of the State of Colorado who may be served with Citation by serving its registered agent, INCORP SERVICES, INC. at 36 South 18th Avenue, Suite D, Brighton, CO 80601.

6. Defendant PUNJAB NATIONAL BANK (INTERNATIONAL) LTD. ("PNB") is an international financial lending institution registered in the countries of England and Wales with a

company number of 05781326 with a principal office of 1 Moorgate, London EC2R 6JH, United Kingdom.

7. Defendant CITIBANK N.A. ("CITI") is a national banking association with banking operations in New York, with offices located at 338 Greenwich Street New York, NY 10013.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1331, which provides District Courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States and because of the forum selection clause.

9. This Court has personal jurisdiction because of a forum selection clause.

10. Venue is proper pursuant to 28 U.S.C. 1391(b) because the events giving rise to the allegations in this complaint occurred in this district and because of the forum selection clause.

11. This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. §1332.  The Defendant is an entity of a state different than that of the Plaintiff and the amount in controversy exceeds $75,000.00.00, exclusive of interest and costs. Plaintiff also invokes the supplemental jurisdiction of this Court with respect to claims based upon the laws of the State of New York, pursuant to 28 U.S.C. § 1367 and because of the forum selection clause.

## FACTS

12. On August 22, 2014, Hilliard entered into a Consulting Service Agreement ("CSA") with TRI and its subsidiaries, TRISHE WIND OHIO, LLC ("TWO"), TWM, and TWC, to provide services and fees related to the sale of wind projects in Ohio, Minnesota, and Colorado. Hilliard was to be paid a monthly consulting fee.   Hilliard was also to receive a "Success Fee"

equivalent to 12% of any sale that occurred during the contract term or 5% of any sale that occurred within eighteen months after the contract terminated. [**Exhibit A – Consulting Service Agreement**] - attached hereto and incorporated herein.

13. § 5 (c)(1) of the CSA states:

*If, at any time, during the term of this Agreement the Company or any of its subsidiaries or affiliates consummates any Transaction(s) as that term is defined in this Agreement, the Company agrees to pay Consultant a 12% ("Success Fee" [sic] as defined herein. If for a period of eighteen months (18) following termination of this agreement, the Company or any of its subsidiaries or affiliates consummates any Transaction(s), the Company shall pay the consultant 5% of the value of any Transaction(s) in lieu of a Success Fee.*

14. Further, in § 5 (c)(2) the Success Fee is described as:

*12% of the Developer's Fee (as defined herein) received by the Company from a buyer of the Project(s) as and when received in cash by the Company. Each Success Fee payable under this agreement by the Company to the Consultant shall be paid at the closing or finalization of each, any and all Transaction(s) which result in a Developer's Fee being paid to the Company.*

15. Pursuant to the responsibilities outlined in the CSA agreement, Hilliard found a buyer for TWO, Starwood Energy Group Global, Inc. ("Starwood") which formed NWO Holdco, LLC ("NWO") as the vehicle to purchase TWO from TRI.

16. On November 6, 2014, Hilliard and TRI executed a separate CSA for additional services relating to aforementioned sale. See [**Exhibit B – Consulting Service Agreement**] - attached hereto and incorporated herein.

17. On October 20, 2014, all of the aforementioned parties entered into several agreements related to the sale of TRI's membership interests in TWO, a wholly owned subsidiary of TRI that had been developing a wind energy project in Paulding and Van Wert Counties, Ohio.

18. Five (5) major documents were created from this sale: **1**. *Membership Interest Purchase and Sale Agreement* "MIPSA" detailing the sale that Hilliard orchestrated, **2**. *Payment Instruction Letter* in which PNB further agreed to finance and pay debts on behalf of TRI, **3**. *Tri-Party Agreement* entitling Hilliard to 12% of sale proceeds for the specific sale and PNB's fiduciary duty to make payments, to Hilliard on behalf of TRI and also as a surety and guarantor, **4**. *Mutual Release and Amendment Agreement* of liability of TWO and NWO by the remaining parties, and **5.** *Mutual Interests Assignments Agreement.*  This suit alleges breach of the CSA and the Tri-Party Agreement.

19. Hilliard brought suit against TRI, TWM and TWC in the District Court for the 385th District in Midland County, Texas for breach of the CSA at Cause No. 50941.  Hilliard was awarded partial summary judgment against TRI, TWM and TWC on the issue of breach of contract under the CSA for fees earned through May 1, 2016, and was awarded damages of $344,848.15, of which $30,000.00 was related to the TRI/NWO transaction in Ohio. The case did not concern fees owed after May 1, 2016, because (1) TRI, TWM and TWC did not produce bank statements after that date, and (2) at the time, there were future payments not yet due to Hilliard, as construction milestones triggering payment under the contract had not yet been met. Hilliard also received a default judgment against TRI, TWM and TWC in the amount of $2,498,119.37, which incorporated the amount previously awarded for partial summary judgment, for flagrant discovery abuses. TRI, TWM and TWC appealed the order granting default judgment, which the 11th Court of Appeals and Texas Supreme Court affirmed. The

judgment became enforceable against TRI, TWM and TWC on June 18, 2017. The case was not decided on the merits for payments due and owing Hilliard under the CSA after May 1, 2016.

20. Hilliard domesticated its judgment against TRI, TWM and TWC in Paulding County, Ohio, where TRI's Ohio wind energy project was located, and for which NWO still owed TRI purchase payments under the MIPSA. NWO filed an interpleader action against TRI and Hilliard pursuant to interpleader provisions in the MIPSA on October 19, 2017, at Case No. CI 17 114 in the Court of Common Pleas of Paulding County, Ohio. NWO deposited a portion of the purchase price payments due TRI under the MIPSA equivalent to the value of Hilliard's judgment, $2,498,119.37, with the court, seeking a determination of right to receive it – TRI pursuant to the MIPSA, or Hilliard in satisfaction of its default judgment. PNB intervened, claiming the funds on deposit should instead be paid to PNB pursuant to the Payment Instruction Letter. The court granted PNB's motion for summary judgment against Hilliard. The case is now on appeal to the 3rd District Court of Appeals of Ohio. At Hilliard's request, the court of common pleas entered a stay of distribution of the funds on deposit with the court.

***Formation of the Membership Interest Purchase and Sale Agreement ("MIPSA")***
***Sale of TWO & TRI's Membership Interests to NOW***
***(Effective Date:  October 20, 2014)***

21. Hilliard, as consultant to TRI and their subsidiaries, found a buyer, NWO, for the TWO wind energy project. Hilliard was to be compensated for this transaction, as detailed in the CSA. The project being completed, TRI has now received all proceeds from the sale per this agreement (except for the $2,498,119.37 on deposit with the Court of Common Pleas of Paulding County, Ohio), and has failed to compensate Hilliard the 12% success fee for its services. **[Exhibit C – MIPSA Agreement]** - attached hereto and incorporated herein. Rates and compensation were

amended in the subsequent Mutual Release and Amendment Agreement dated October 20, 2014.

**[Exhibit D – Mutual Release and Amendment Agreement]**

22. TRI, as seller, and NWO, as Buyer, entered into the MIPSA on October 20, 2014. Pursuant to the MIPSA, TRI agreed to sell all right title and interest in and to its Membership Interest in TWO to NWO. The MIPSA provides that in consideration of the sale of the Membership Interest, "...*Buyer shall provide the following consideration to the seller*..." See, §. 2.1(b) of MIPSA. Thus, the MIPSA establishes TRI's right to receive the Purchase Price.

23. The MIPSA details the payments to be made by the Buyer, NWO, to the Seller, TRI, in which the Plaintiff is entitled to payment.

24. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the Seventy-Five Thousand Dollar ($75,000.00) payment made TRI on the closing date. The Plaintiff is entitled to $9,000.00 of this payment.

25. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the One Hundred and Seventy-Five Thousand Dollar ($175,000.00) payment made to TRI. The Plaintiff is entitled to $21,000.00 of this payment.

26. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the twenty-five percent (25%) of the Phase I Adjusted Development Fee, ($9,000,000.00) *plus* (y) reimbursement of certain interconnection costs in an amount equal to Three Hundred Sixty-Eight Thousand and Five Hundred Dollars ($368,500.00) which was due and payable on the date of the closing. The Plaintiff is entitled to $314,220.00 of this payment.

27. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the twenty-five percent (25%) of the Phase I Adjustment Development Fee, ($9,000,000.00) which was due and payable within thirty (30) days after the date of the closing The Plaintiff is entitled to $270,000.00 of this payment.

28. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of an amount equal to the sum of (x) twenty-five percent (25%) of the Phase I Adjusted Development Fee, ($9,000,000.00) and (y) fifty percent (50%) of the Phase II Development Fee ($8,250,000.00) which was due and paid on the date of the closing. The Plaintiff is entitled to $765,000.00 of this payment.

29. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of an amount equal to the sum of (x) twenty-five percent (25%) of the Phase I Adjusted Development Fee, ($9,000,000.00) and (y) fifty percent (50%) of the Phase II Development Fee ($8,250,000.00) which was due and paid on the date of the closing. The Plaintiff is entitled to $765,000.00 of this payment.

30. Hilliard is entitled to a success fee of 12% of the aforementioned purchase price payments pursuant to the executed CSA and MIPSA. When applied to the prices and values set forth in the MIPSA, the Plaintiff is entitled to monetary rewards totaling $2,114,190.00 which includes the partial summary judgment payments awarded to Hilliard of $30,000.00 by the District Court for the 385th District in Midland County, Texas for breach of the CSA at Cause No. 50941. And further, this does not include future monies that will be owed.

*Formation of the Tri-Party Agreement ("Tri-Party")  Governing Document that Requires PNB to Compensate Hilliard for Proceeds*

*(Effective Date: October 20, 2014)*

31. TRI, PNB and Hilliard entered into the Tri-Party Agreement on October 20, 2014, the same date as the MIPSA and Payment Instruction Letter. PNB agreed to pay Hilliard directly 12% of the purchase price of payments received on behalf of TRI pursuant to the MIPSA and the CSA, with exception for the first $250,000 received at closing, which was to belong wholly to PNB. **[Exhibit E – Tri-Party Agreement]** - attached hereto and incorporated herein.

32. In the Tri-Party Agreement, PNB *"… irrevocably, absolutely, and unconditionally…"* agrees to pay Hilliard by same day wire transfer, without set off or counterclaim and without deduction for taxes. See, § 2.1 of Tri-Party Agreement.

33. The Tri-Party Agreement further defines the Citibank Account from which payments are to be made to Hilliard as the "TRI Account." As an additional part of the definition of the Citibank Account, the Tri-Party Agreement establishes that Trishe Resources, Inc. ("TRI") is the *"Beneficiary A/c name."* The Tri-Party Agreement repeatedly and consistently denominates the Citibank Account as the *"TRI Account."* The parties, during the negotiations for the Tri-Party Agreement, denominated the account as the *"TRI Account."*

34. PNB and TRI agreed to fully enforce the [Payment Instruction Letter] and to not take any action that could result in purchase price payments being paid by buyer other than directly into the TRI Account, including amending or otherwise modifying the [Payment Instruction Letter] without Hilliard's prior written consent.

35. PNB acknowledged and agreed that its obligations under this agreement are primary and shall continue even if all indebtedness and other amounts owing to PNB in respect of TRI and/or TWO have been fully paid or otherwise satisfied and shall not be affected by any circumstance relating to the payment obligations hereunder that might otherwise constitute a legal or equitable discharge of or defense of a guarantor or surety. PNB waived all suretyship defenses.

36. Hilliard agreed to release TWO from its obligations under the Consulting Services Agreement.

37. As a consequence of the covenants entered into by PNB in the Tri-Party Agreement, PNB became a fiduciary for Hilliard and TRI regarding the disposition of the purchase price payments. In exercising such a role PNB serves at the instruction of its principals, Hilliard, and TRI.

38. In §2.3 of the Tri-Party Agreement, PNB acknowledged that its obligations under the agreement are primary. PNB further agreed that its obligations "shall not be affected by any circumstance relating to the payment obligations that might otherwise constitute a legal or equitable discharge of or defense of a guarantor or surety. All suretyship defenses are hereby waived." PNB is precluded from utilizing the Tri-Party agreement as a defense to payment; it cannot claim that its principal, TRI, is not entitled to the funds nor can it claim that its principal, Hilliard, is not entitled to the funds due it. PNB also became a surety and guarantor for payment due to Hilliard under the MIPSA and CSA.

### *Formation of the Payment Instruction Letter Directing Payment of Fees to be Held by PNB on Behalf of TRI*

### *(Effective Date: October 20, 2014)*

39. TRI, PNB, NWO are all parties to the subsequent Payment Instruction Letter. This letter was produced for the benefit of buyer pursuant to § 2.2(b)(xiii) in the MIPSA. **[Exhibit F – Payment Instruction Letter] -** attached hereto and incorporated herein.

40. This letter by and among PNB, TRI and NWO, dated as of the date hereof, details the payment instructions as to payment of the Purchase Price. (MIPSA §1.1, Definitions).

41. TRI irrevocably authorized and directed that any payments which were due and payable to TRI under the MIPSA, including without limitation all payments of the Purchase Price, shall be made directly to the TRI account in accordance with the listed payment instructions.

42. TRI agreed that it shall not submit any change to the above payment instructions, and NWO shall not accept any change to the payment instructions, absent the prior written consent of PNB and TRI.

### *Formation of Mutual Release and Amendment Agreement Document Releasing TWO from any Liabilities Responsible by TRI, and All Subsidiaries.*

### *(Effective Date: October 20, 2014)*

43. In this agreement, TRI, TWO, TWM, TWC and Hilliard agreed that Hilliard irrevocably released and forever discharged TWO and its successors and assigns from any and all claims, liabilities, damages, costs and expenses and other rights or remedies now existing or hereafter arising out of or in connection with the CSA. **[Exhibit D] -** attached hereto and incorporated herein.

44. TWO Irrevocably released and forever discharged Hilliard and its successors and assigns from any and all claims, liabilities, damages, costs and expenses and other rights or remedies now existing or hereafter arising out of or in connection with the CSA.

45. The parties agreed and confirmed that the CSA was amended to exclude TWO as a party thereto; that the rights, duties, and obligations of the parties (other than TWO) under the CSA shall continue in full force and effect and ratified the Agreement in all respects; TRI, TWM and TWC acknowledged that notwithstanding anything herein or in the CSA to the contrary, the TWO Sale constitutes a Transaction (as defined in the CSA) in respect of which Hilliard is entitled to a 12% Success Fee (as defined in the CSA) in accordance with the CSA (as amended hereby) and that neither this agreement nor the Release of TWO has any effect on the obligations of TRI, TWM and TWC to fully satisfy such payment obligations.

### *Formation of the Membership Interest Assignment Agreement*
### *TRI and NWO Agree that NWO Holds All Right and Title of TWO*
### *(Effective Date: October 20, 2014)*

46. TRI and NWO agreed that TRI irrevocably sold, granted, conveyed, transferred, assigned, and delivered to NWO all right title and interest in the membership interests in TWO. TRI irrevocably delegated any and all duties, obligations, responsibilities, claims, demands, and other commitments in connection with the membership interest to NWO. **[Exhibit G – Membership Interest Assignments Agreement]** - attached hereto and incorporated herein.

### <u>COUNT I</u>

### <u>(BREACH OF CONTRACT AGAINST TRI, TWM, TWC, AND PNB)</u>

47. All prior paragraphs of this complaint are repeated, re-alleged and incorporated by

reference as though set forth herein.

48. The Defendants TRI, TWM, TWC and PNB, their principals, and agents have breached the CSA and Tri-Party Agreement, by refusing to compensate the Plaintiff for services and fees rendered.  As a result of this breach, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

49. Defendant PNB and all its principals and agents, have breached the Tri-Party Agreement by intentionally and maliciously refusing to remit payment to Plaintiff in accordance with the Tri-Party Agreement and the MIPSA.  As a result of this breach, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

50. Defendant PNB has breached its fiduciary duty and duty as surety and guarantor owed to Hilliard under the Tri-Party agreement by intentionally and maliciously withholding payments due to Hilliard under the Tri-Party Agreement, CSA and MIPSA. As a result of this breach, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

51. Defendants TRI, TWM, TWC, and PNB have breached their contract(s) with the Plaintiff by refusing to disburse payment. On August 22,2014, Hilliard entered into a CSA with TRI and its subsidiaries, TWO, TWM, and TWC, to provide services related to the sale of wind projects in Ohio, Minnesota, and Colorado. Hilliard was to be paid a monthly consulting fee. Hilliard was also to receive a "success fee" equivalent to 12% of any sale that occurred during the contract term or 5% of any sale that occurred within eighteen months after the contract

terminated. As a result of this breach, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

52. Hilliard gave swift and just performance pursuant to the scope of work outlined in the CSA. Hilliard, as consultant to TRI and its subsidiaries, found a buyer, NWO, for TRI's project TWO. Hilliard was to be compensated for this transaction, as detailed in the CSA. TRI received all proceeds of the sale as per the MIPSA and has failed to compensate Hilliard the 12% success fee for its services. The Defendants have refused to issue remittance to the Plaintiff for services and fees rendered. As a result of this breach, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

53. § 5 (c)(1) of the CSA states:

*If, any time, during the term of this Agreement the Company or any of its subsidiaries or affiliates consummates any Transaction(s) as that term is defined in this Agreement, the Company agrees to pay Consultant a 12% ("Success Fee") [sic] as defined herein. If for a period of eighteen months (18) following termination of this agreement, the Company or any of its subsidiaries or affiliates consummates any Transaction(s), the Company shall pay the consultant 5% of the value of any Transaction(s) in lieu of a Success Fee.*

54. Further, in § 5 (c)(2) the Success Fee is described as:

*12% of the Developer's Fee (as defined herein) received by the Company from a buyer of the Project(s) as and when received in cash by the Company. Each Success Fee payable under this agreement by the Company to the Consultant shall be paid at the closing or finalization of each, any and all Transaction(s) which result in a Developer's Fee being paid to the Company.*

14

55. TRI, as seller, and NWO, as Buyer, entered into the MIPSA on October 20, 2014. Pursuant to the MIPSA, TRI agreed to sell all right title and interest in and to the Membership Interest in TWO to NWO. The MIPSA provides that in consideration of the sale of the Membership Interest, "*...Buyer shall provide the following consideration to the seller...*" See, §. 2.1(b) of MIPSA. Thus, the MIPSA establishes TRI's right to receive the Purchase Price.

56. The MIPSA details the payments made by the Buyer, NWO, to the Seller, TRI, in which the Plaintiff is entitled to payment.

57. Defendants TRI, TWM, TWC, and PNB have breached their contract(s) with the Plaintiff by refusing to disburse payment. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the Seventy-Five Thousand Dollar ($75,000.00) payment made TRI on the closing date. The Plaintiff is entitled to $9,000.00 of this payment.

58. Defendants TWI, TWM, TWC, and PNB have breached their contract(s) with the Plaintiff by refusing to disburse payment. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the One Hundred and Seventy-Five Thousand Dollar ($175,000.00) payment made to TRI.

59. Defendants TWI, TWM, TWC, and PNB have breached their contract(s) with the Plaintiff by refusing to disburse payment. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the twenty-five percent (25%) of the Phase I Adjusted Development Fee, ($9,000,000.00) *plus* (y) reimbursement of certain interconnection costs in an amount equal to Three Hundred Sixty-Eight Thousand and Five Hundred Dollars ($368,500.00) which was due payable on the date of the closing.  The Plaintiff is entitled to $314,220.00 of this payment.

60. Defendants TWI, TWM, TWC, and PNB have breached their contract(s) with the Plaintiff by refusing to disburse payment. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the twenty-five percent (25%) of the Phase I Adjustment Development Fee, ($9,000,000.00) which was due and payable within thirty (30) days after the date of the closing. The Plaintiff is entitled to $270,000.00 of this payment.

61. Defendants TWI, TWM, TWC, and PNB have breached their contract(s) with the Plaintiff by refusing to disburse payment. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of an amount equal to the sum of (x) twenty-five percent (25%) of the Phase I Adjusted Development Fee, ($9,000,000.00) and (y) fifty percent (50%) of the Phase II Development Fee ($8,250,000.00) which was due and paid on the date of the closing. The Plaintiff is entitled to $765,000.00 of this payment.

62. Defendants TWI, TWM, TWC, and PNB have breached their contract(s) with the Plaintiff by refusing to disburse payment. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of an amount equal to the sum of (x) twenty-five percent (25%) of the Phase I Adjusted Development Fee, ($9,000,000.00) and (y) fifty percent (50%) of the Phase II Development Fee ($8,250,000.00) which was due and paid on the date of the closing. The Plaintiff is entitled to $765,000.00 of this payment.

63. Defendants TWI, TWM, TWC, and PNB have breached their contract(s) with the Plaintiff by refusing to disburse payment. Hilliard is entitled to a success fee of 12% of the aforementioned purchase price payments pursuant to the executed CSA and MIPSA. When applied to the prices and values set forth in the MIPSA, the Plaintiff is entitled to monetary

rewards totaling $2,114,190.00. As a result of this breach, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

## COUNT II

### (UNJUST ENRICHMENT)

64. All prior paragraphs of this complaint are repeated, re-alleged and incorporated by reference as though set forth herein.

65. Defendants TWI, TWM, TWC, and PNB, and all their subsidiaries, principals, and agents, have unjustly enriched themselves at the expense of the Plaintiff the, by refusing to issue remittance to the Plaintiff for services and fees rendered.  The Defendants have refused to issue remittance to the Plaintiff for services and fees rendered. As a result of this unjust enrichment, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

66. The Defendants have unjustly enriched themselves the Tri-Party agreement by refusing to disburse payment to the Plaintiff as agreed.  In the Tri-Party Agreement, PNB *"... irrevocably, absolutely, and unconditionally..."* agreed to pay Hilliard by same day wire transfer, without set off or counterclaim and without deduction for taxes. See, § 2.1 of Tri-Party Agreement. The Defendant has intentionally and maliciously refused to disburse payment to the Plaintiff. As a result of this unjust enrichment, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

67. Defendants TWI, TWM, TWC, and PNB, and all their subsidiaries, principals, and agents, have unjustly enriched themselves at the expense of the Plaintiff by refusing to disburse

payment. In §2.3 of the Tri-Party Agreement, PNB acknowledged that its obligations under the

agreement are primary. PNB further agreed that its obligations "shall not be affected by any

circumstance relating to the payment obligations here under that might otherwise constitute a

legal or equitable discharge of or defense of a guarantor or surety. All suretyship defenses are

waived." PNB is precluded from utilizing the Tri-Party agreement as a defense to payment; it

cannot claim that its principal, TRI, is not entitled to the funds. Nor can it claim that its principal,

Hilliard, is not entitled to the funds due it. As a result of this unjust enrichment, the Plaintiff has

suffered monetary damages and deserves judgement against the Defendants for the sum total of

$2,114,190.00.

68. Defendants TWI, TWM, TWC, and PNB, and all their subsidiaries, principals, and

agents, have unjustly enriched themselves at the expense of Plaintiff by refusing to disburse

payment. On August 22,2014, Hilliard entered into a Consulting Service Agreement ("CSA")

with TRI and its subsidiaries, TWO, TWM, and TWC, to provide services related to the sale of

wind projects in Ohio, Minnesota, and Colorado. Hilliard was to be paid a monthly consulting

fee.   Hilliard was also to receive a "success fee" equivalent to 12% of any sale that occurred

during the contract term or 5% of any sale that occurred within eighteen months after the

contract terminated. As a result of this breach, the Plaintiff has suffered monetary damages and

deserves judgement against the Defendants for the sum total of $2,114,190.00.

69. Hilliard gave swift and just performance pursuant to the scope of work outlined in the

CSA. Hilliard as consultant to TRI and their subsidiaries found a buyer, NWO, for their project

TWO. Hilliard was to be compensated for this transaction, as detailed in the CSA. TRI received

all proceeds of the sale as per this agreement and has failed to compensate Hilliard the 12%

success fee for their services. The Defendants have refused to issue remittance to the Plaintiff for

services and fees rendered. As a result of this unjust enrichment, the Plaintiff has suffered

monetary damages and deserves judgement against the Defendants for the sum total of

$2,114,190.00.

70. § 5 (c)(1) of the CSA states:

*If, any time, during the term of this Agreement the Company or any of its subsidiaries or*

*affiliates consummates any Transaction(s) as that term is defined in this Agreement, the*

*Company agrees to pay Consultant a 12% ("Success Fee") [sic] as defined herein. If for a*

*period of eighteen months (18) following termination of this agreement, the Company or any of*

*its subsidiaries or affiliates consummates any Transaction(s), the Company shall pay the*

*consultant 5% of the value of any Transaction(s) in lieu of a Success Fee.*

71. Further, in § 5 (c)(2) the Success Fee is described as:

*12% of the Developer's Fee (as defined herein) received by the Company from a buyer of*

*the Protect(s) as and when received in cash by the Company. Each Success Fee payable under*

*this agreement by the Company to the Consultant shall be paid at the closing or finalization of*

*each, any and all Transaction(s) which result in a Developer's Fee being paid to the Company.*

72. TRI, as seller, and NWO, as Buyer, entered into the MIPSA on October 20, 2014.

Pursuant to the MIPSA, TRI agreed to sell all right title and interest in and to the Membership

Interest in TWO to NWO. The MIPSA provides that in consideration of the sale of the

Membership Interest, "...*Buyer shall provide the following consideration to the seller...*" See, §.

2.1(b) of MIPSA. Thus, the MIPSA establishes TRI's right to receive the Purchase Price.

73. The MIPSA details the payments made by the Buyer, NWO, to the Seller, TRI, in

which the Plaintiff is entitled to payment.

74. Defendants TWI, TWM, TWC, and PNB, and all their subsidiaries, principals, and agents, have unjustly enriched themselves at the expense of the Plaintiff by refusing to disburse payment. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the Seventy-Five Thousand Dollar ($75,000.00) payment made TRI on the closing date. The Plaintiff is entitled to $9,000.00 of this payment.

75. Defendants TWI, TWM, TWC, and PNB, and all their subsidiaries, principals, and agents, have unjustly enriched themselves at the expense of the Plaintiff by refusing to disburse payment. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the One Hundred and Seventy-Five Thousand Dollar ($175,000.00) payment made to TRI following their presentation of Transfer of Evidence. The Plaintiff is entitled to $21,000.00 of this payment.

76. Defendants TWI, TWM, TWC, and PNB have unjustly enriched themselves at the expense of the Plaintiff by refusing to disburse payment. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the twenty-five percent (25%) of the Phase I Adjusted Development Fee, ($9,000,000.00) *plus* (y) reimbursement of certain interconnection costs in an amount equal to Three Hundred Sixty-Eight Thousand and Five Hundred Dollars ($368,500.00) which was due payable on the date of the closing.  The Plaintiff is entitled to $314,220.00 of this payment.

77. Defendants TWI, TWM, TWC, and PNB have unjustly enriched themselves at the expense of the Plaintiff by refusing to disburse payment. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the twenty-five percent (25%) of the Phase I Adjustment Development Fee, ($9,000,000.00) which was due and payable within thirty (30) days after the date of the closing. The Plaintiff is entitled to $270,000.00 of this payment.

78. Defendants TWI, TWM, TWC, and PNB have unjustly enriched themselves at the expense of the Plaintiff by refusing to disburse payment. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of an amount equal to the sum of (x) twenty-five percent (25%) of the Phase I Adjusted Development Fee, ($9,000,000.00) and (y) fifty percent (50%) of the Phase II Development Fee ($8,250,000.00) which was due and paid on the date of the closing. The Plaintiff is entitled to $765,000.00 of this payment.

79. Defendants TWI, TWM, TWC, and PNB have unjustly enriched themselves at the expense of the Plaintiff by refusing to disburse payment. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% an amount equal to the sum of (x) twenty-five percent (25%) of the Phase I Adjusted Development Fee, ($9,000,000.00) and (y) fifty percent (50%) of the Phase II Development Fee ($8,250,000.00) which was due and paid on the date of the closing. The Plaintiff is entitled to $765,000.00 of this payment.

80. Defendants TWI, TWM, TWC, and PNB have unjustly enriched themselves at the expense of the Plaintiff by refusing to disburse payment. Hilliard is entitled to a success fee of 12% of the aforementioned purchase price payments pursuant to the executed CSA and MIPSA. When applied to the prices and values set forth in the MIPSA, the Plaintiff is entitled to monetary rewards totaling $2,114,190.00. As a result of this breach, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

## COUNT III

## (BREACH OF FIDICUARY DUTY AS GUARANTOR AGAINST PNB)

81. Defendant PNB and all their principals and agents, have breached their fiduciary duty

as guarantor as agreed upon in the Tri-Party Agreement by refusing to issue remittance to the Plaintiff.  Defendant has refused to issue remittance to the Plaintiff for services and fees rendered. As a result of this breach, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

82. The Defendant, and all their principals and agents, have breached their fiduciary duty as guarantor as agreed upon in the Tri-Party Agreement and MIPSA by refusing to disburse payment to the Plaintiff for services and fees rendered. In the Tri-Party Agreement, PNB *"... irrevocably, absolutely, and unconditionally..."* agreed to pay Hilliard by same day wire transfer, without set off or counterclaim and without deduction for taxes. See, § 2.1 of Tri-Party Agreement. The Defendant has intentionally and maliciously refused to disburse payment to the Plaintiff. As a result of this breach, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

83. The Defendant, and all their principals and agents, have breached their fiduciary duty as guarantor as agreed upon in the Tri-Party Agreement and MIPSA by refusing to disburse payment to the Plaintiff for services and fees rendered. In §2.3 of the Tri-Party Agreement, PNB acknowledged that its obligations under the agreement are primary. PNB further agreed that its obligations "shall not be affected by any circumstance relating to the payment obligations here under that might otherwise constitute a legal or equitable discharge of or defense of a guarantor or surety. All suretyship defenses are hereby waived." PNB is precluded from utilizing the Tri - Party agreement as a defense to payment; it cannot claim that its principal, TRI, is not entitled to the funds. Nor can it claim that its principal, Hilliard, is not entitled to the funds due it. As a result of this breach, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

84. The Defendant, and all their principals and agents, have breached their fiduciary duty as guarantor as agreed upon in the Tri-Party Agreement and MIPSA by refusing to disburse payment to the Plaintiff for services and fees rendered. The Plaintiff is entitled to 12% of the Seventy-Five Thousand Dollar ($75,000.00) payment made TRI on the closing date. The Plaintiff is entitled to $9,000.00 of this payment.

85. The Defendant, and all their principals and agents, have breached their fiduciary duty as guarantor as agreed upon in the Tri-Party Agreement and MIPSA by refusing to compensate the Plaintiff for services and fees rendered. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the One Hundred and Seventy-Five Thousand Dollar ($175,000.00) payment made to TRI following their presentation of Transfer of Evidence. The Plaintiff is entitled to $21,000.00 of this payment.

86. The Defendant, and all their principals and agents, have breached their fiduciary duty as guarantor as agreed upon in the Tri-Party Agreement and MIPSA by refusing to compensate the Plaintiff for services and fees rendered. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the twenty-five percent (25%) of the Phase I Adjusted Development Fee, ($9,000,000.00) *plus* (y) reimbursement of certain interconnection costs in an amount equal to Three Hundred Sixty-Eight Thousand and Five Hundred Dollars ($368,500.00) which was due payable on the date of the closing.  The Plaintiff is entitled to $314,220.00 of this payment.

87. The Defendant, and all their principals and agents, have breached their fiduciary duty as guarantor as agreed upon in the Tri-Party Agreement and MIPSA by refusing to compensate the Plaintiff for services and fees rendered. Pursuant to the executed CSA and MIPSA, the

Plaintiff is entitled to 12% of the twenty-five percent (25%) of the Phase I Adjustment
Development Fee, ($9,000,000.00) which was due and payable within thirty (30) days after the
date of the closing.  The Plaintiff is entitled to $270,000.00 of this payment.

88. The Defendant, and all their principals and agents, have breached their fiduciary duty
as guarantor as agreed upon in the Tri-Party Agreement and MIPSA by refusing to compensate
the Plaintiff for services and fees rendered. Pursuant to the executed CSA and MIPSA, the
Plaintiff is entitled to 12% of an amount equal to the sum of (x) twenty-five percent (25%) of the
Phase I Adjusted Development Fee, ($9,000,000.00) and (y) fifty percent (50%) of the Phase II
Development Fee ($8,250,000.00) which was due and paid on the date of the closing. The
Plaintiff is entitled to $765,000.00 of this payment.

89. The Defendant, and all their principals and agents, have breached their fiduciary duty
as guarantor as agreed upon in the Tri-Party Agreement and MIPSA by refusing to compensate
the Plaintiff for services and fees rendered. Pursuant to the executed CSA and MIPSA, the
Plaintiff is entitled to 12% an amount equal to the sum of (x) twenty-five percent (25%) of the
Phase I Adjusted Development Fee, ($9,000,000.00) and (y) fifty percent (50%) of the Phase II
Development Fee ($8,250,000.00) which was due and paid on the date of the closing. The
Plaintiff is entitled to $765,000.00 of this payment.

90. The Defendant, and all their principals and agents, have breached their fiduciary duty
as guarantor as agreed upon in the Tri-Party Agreement and MIPSA by refusing to compensate
the Plaintiff for services and fees rendered. In §2.3 of the Tri-Party Agreement, PNB
acknowledged that its obligations under the agreement are primary. PNB further agreed that its
obligations "shall not be affected by any circumstance relating to the payment obligations here

under that might otherwise constitute a legal or equitable discharge of or defense of a guarantor or surety. All suretyship defenses are hereby waived." PNB is precluded from utilizing the Tri-Party agreement as a defense to payment; it cannot claim that its principal, TRI, is not entitled to the funds. Nor can it claim that its principal, Hilliard, is not entitled to the funds due it. As a result of this breach, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

## COUNT IV

## (BREACH OF SURETYSHIP AGAINST PNB)

91. Defendant PNB and all their principals and agents, have breached their suretyship as agreed upon in the Tri-Party Agreement by refusing to compensate the Plaintiff for services and fees rendered. The Defendant has refused to issue remittance to the Plaintiff for services and fees rendered. As a result of this breach, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

92. The Defendant, all their principals and their agents, have breached their suretyship as agreed upon in the Tri-Party Agreement and MIPSA by refusing to disburse payment to the Plaintiff for services and fees rendered. In the Tri-Party Agreement, PNB *"... irrevocably, absolutely, and unconditionally..."* agrees to pay Hilliard by same day wire transfer, without set off or counterclaim and without deduction for taxes. See, § 2.1 of Tri-Party Agreement. The Defendant has intentionally and maliciously refused to disburse payment to the Plaintiff. As a result of this breach, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

93. The Defendant, all their principals and their agents, have breached their suretyship as

agreed upon in the Tri-Party Agreement and MIPSA by refusing to disburse payment to the Plaintiff for services and fees rendered. In §2.3 of the Tri-Party Agreement, PNB acknowledged that its obligations under the agreement are primary. PNB further agreed that its obligations "shall not be affected by any circumstance relating to the payment obligations here under that might otherwise constitute a legal or equitable discharge of or defense of a guarantor or surety. All suretyship defenses are hereby waived." PNB is preclude it from utilizing the Tri -Party agreement as a defense to payment; it cannot claim that its principal, TRI, is not entitled to the funds. Nor can it claim that its principal, Hilliard, is not entitled to the funds due it. As a result of this breach, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

94. The Defendant, all their principals and their agents, have breached their suretyship as agreed upon in the Tri-Party Agreement and MIPSA by refusing to disburse payment to the Plaintiff for services and fees rendered. The Plaintiff is entitled to 12% of the Seventy-Five Thousand Dollar ($75,000.00) payment made TRI on the closing date. The Plaintiff is entitled to $9,000.00 of this payment.

95. The Defendant, all their principals and their agents, have breached their suretyship as agreed upon in the Tri-Party Agreement and MIPSA by refusing to compensate the Plaintiff for services and fees rendered. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the One Hundred and Seventy-Five Thousand Dollar ($175,000.00) payment made to TRI following their presentation of Transfer of Evidence. The Plaintiff is entitled to $21,000.00 of this payment.

96. The Defendant, all their principals and their agents, have breached their suretyship as agreed upon in the Tri-Party Agreement and MIPSA by refusing to compensate the Plaintiff for services and fees rendered. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the twenty-five percent (25%) of the Phase I Adjusted Development Fee, ($9,000,000.00) *plus* (y) reimbursement of certain interconnection costs in an amount equal to Three Hundred Sixty-Eight Thousand and Five Hundred Dollars ($368,500.00) which was due payable on the date of the closing.  The Plaintiff is entitled to $314,220.00 of this payment.

97. The Defendant, all their principals and their agents, have breached their suretyship as agreed upon in the Tri-Party Agreement and MIPSA by refusing to compensate the Plaintiff for services and fees rendered. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the twenty-five percent (25%) of the Phase I Adjustment Development Fee, ($9,000,000.00) which was due and payable within thirty (30) days after the date of the closing. The Plaintiff is entitled to $270,000.00 of this payment.

98. The Defendant, all their principals and their agents, have breached their suretyship as agreed upon in the Tri-Party Agreement and MIPSA by refusing to compensate the Plaintiff for services and fees rendered. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of an amount equal to the sum of (x) twenty-five percent (25%) of the Phase I Adjusted Development Fee, ($9,000,000.00) and (y) fifty percent (50%) of the Phase II Development Fee ($8,250,000.00) which was due and paid on the date of the closing. The Plaintiff is entitled to $765,000.00 of this payment.

99. The Defendant, all their principals and their agents, have breached their suretyship as agreed upon in the Tri-Party Agreement and MIPSA by refusing to compensate the Plaintiff for

services and fees rendered. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% an amount equal to the sum of (x) twenty-five percent (25%) of the Phase I Adjusted Development Fee, ($9,000,000.00) and (y) fifty percent (50%) of the Phase II Development Fee ($8,250,000.00) which was due and paid on the date of the closing. The Plaintiff is entitled to $765,000.00 of this payment.

100. The Defendant, all their principals and their agents, have breached their suretyship as agreed upon in the Tri-Party Agreement and MIPSA by refusing to compensate the Plaintiff for services and fees rendered. In §2.3 of the Tri-Party Agreement, PNB acknowledged that its obligations under the agreement are primary. PNB further agreed that its obligations "shall not be affected by any circumstance relating to the payment obligations here under that might otherwise constitute a legal or equitable discharge of or defense of a guarantor or surety. All suretyship defenses are hereby waived." PNB is preclude it from utilizing the Tri-Party agreement as a defense to payment; it cannot claim that its principal, TRI, is not entitled to the funds. Nor can it claim that its principal, Hilliard, is not entitled to the funds due it. As a result of this breach, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

## COUNT V

## (DEMAND FOR SPECIFIC PERFORMANCE AGAINST PNB)

101. Defendant PNB and all their principals and agents, have breached their fiduciary duty as guarantor and suretyship as agreed upon in the Tri-Party Agreement by refusing to compensate the Plaintiff for services and fees rendered.  The Defendant has refused to issue remittance to the Plaintiff for services and fees rendered. As a result of this breach, the Plaintiff

demands specific performance that Defendant PNB issues remittance for all due, owed, and outstanding debts to the Plaintiff for services and fees rendered. Should the Defendant continue to refuse issuance of the aforementioned remittance, the Plaintiff will continue to suffer monetary damages and deserve judgement against the Defendants TWI, TWM, TWC, and PNB for the sum total of $2,114,190.00.

102. The Defendant, all their principals and their agents, have breached their fiduciary duty as guarantor and suretyship as agreed upon in the Tri-Party Agreement and MIPSA by refusing to disburse payment to the Plaintiff for services and fees rendered. In the Tri-Party Agreement, PNB *"... irrevocably, absolutely, and unconditionally..."* agrees to pay Hilliard by same day wire transfer, without set off or counterclaim and without deduction for taxes. See, § 2.1 of Tri-Party Agreement. The Defendant has intentionally and maliciously refused to disburse payment to the Plaintiff. As a result of this breach, the Plaintiff demands specific performance that Defendant PNB issues remittance for all due, owed, and outstanding debts to the Plaintiff for services and fees rendered. Should the Defendant continue to refuse issuance of the aforementioned remittance, the Plaintiff will continue to suffer monetary damages and deserve judgement against the Defendants TWI, TWM, TWC, and PNB for the sum total of $2,114,190.00.

103. The Defendant, all their principals and their agents, have breached their fiduciary duty as guarantor and suretyship as agreed upon in the Tri-Party Agreement and MIPSA by refusing to disburse payment to the Plaintiff for services and fees rendered. In §2.3 of the Tri-Party Agreement, PNB acknowledged that its obligations under the agreement are primary. PNB further agreed that its obligations "shall not be affected by any circumstance relating to the payment obligations here under that might otherwise constitute a legal or equitable discharge of

or defense of a guarantor or surety. All suretyship defenses are hereby waived." PNB is preclude it from utilizing the Tri -Party agreement as a defense to payment; it cannot claim that its principal, TRI, is not entitled to the funds. Nor can it claim that its principal, Hilliard, is not entitled to the funds due it. As a result of this breach, the Plaintiff demands specific performance that Defendant PNB issues remittance for all due, owed, and outstanding debts to the Plaintiff for services and fees rendered. Should the Defendant continue to refuse issuance of the aforementioned remittance, the Plaintiff will continue to suffer monetary damages and deserve judgement against the Defendants TWI, TWM, TWC, and PNB for the sum total of $2,114,190.00.

104. The Defendant, all their principals and their agents, have breached their fiduciary duty as guarantor and suretyship as agreed upon in the Tri-Party Agreement and MIPSA by refusing to disburse payment to the Plaintiff for services and fees rendered. The Plaintiff is entitled to 12% of the Seventy-Five Thousand Dollar ($75,000.00) payment made TRI on the closing date. The Plaintiff is entitled to $9,000.00 of this payment.

105. The Defendant, all their principals and their agents, have breached their fiduciary duty as guarantor and suretyship as agreed upon in the Tri-Party Agreement and MIPSA by refusing to compensate the Plaintiff for services and fees rendered. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the One Hundred and Seventy-Five Thousand Dollar ($175,000.00) payment made to TRI following their presentation of Transfer of Evidence. The Plaintiff is entitled to $21,000.00 of this payment.

106. The Defendant, all their principals and their agents, have breached fiduciary duty as guarantor and suretyship as agreed upon in the Tri-Party Agreement and MIPSA by refusing to

compensate the Plaintiff for services and fees rendered. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the twenty-five percent (25%) of the Phase I Adjusted Development Fee, ($9,000,000.00) *plus* (y) reimbursement of certain interconnection costs in an amount equal to Three Hundred Sixty-Eight Thousand and Five Hundred Dollars ($368,500.00) which was due payable on the date of the closing. The Plaintiff is entitled to $314,220.00 of this payment.

107. The Defendant, all their principals and their agents, have breached their fiduciary duty as guarantor and suretyship agreed upon in the Tri-Party Agreement and MIPSA by refusing to compensate the Plaintiff for services and fees rendered. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the twenty-five percent (25%) of the Phase I Adjustment Development Fee, ($9,000,000.00) which was due and payable within thirty (30) days after the date of the closing. The Plaintiff is entitled to $270,000.00 of this payment.

108. The Defendant, all their principals and their agents, have breached their fiduciary duty as guarantor and suretyship as agreed upon in the Tri-Party Agreement and MIPSA by refusing to compensate the Plaintiff for services and fees rendered. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of an amount equal to the sum of (x) twenty-five percent (25%) of the Phase I Adjusted Development Fee, ($9,000,000.00) and (y) fifty percent (50%) of the Phase II Development Fee ($8,250,000.00) which was due and paid on the date of the closing. The Plaintiff is entitled to $765,000.00 of this payment.

109. The Defendant, all their principals and their agents, have breached their fiduciary duty as guarantor and suretyship as agreed upon in the Tri-Party Agreement and MIPSA by refusing to compensate the Plaintiff for services and fees rendered. Pursuant to the executed CSA and

MIPSA, the Plaintiff is entitled to 12% an amount equal to the sum of (x) twenty-five percent (25%) of the Phase I Adjusted Development Fee, ($9,000,000.00) and (y) fifty percent (50%) of the Phase II Development Fee ($8,250,000.00) which was due and paid on the date of the closing. The Plaintiff is entitled to $765,000.00 of this payment.

110. The Defendant, all their principals and their agents, have breached their fiduciary duty as guarantor and suretyship as agreed upon in the Tri-Party Agreement and MIPSA by refusing to compensate the Plaintiff for services and fees rendered. In §2.3 of the Tri-Party Agreement, PNB acknowledged that its obligations under the agreement are primary. PNB further agreed that its obligations "shall not be affected by any circumstance relating to the payment obligations here under that might otherwise constitute a legal or equitable discharge of or defense of a guarantor or surety. All suretyship defenses are hereby waived." PNB is precluded from utilizing the Tri-Party agreement as a defense to payment; it cannot claim that its principal, TRI, is not entitled to the funds. Nor can it claim that its principal, Hilliard, is not entitled to the funds due it. As a result of this breach, the Plaintiff demands specific performance that Defendant PNB issues remittance for all due, owed, and outstanding debts to the Plaintiff for services and fees rendered. Should the Defendant continue to refuse issuance of the aforementioned remittance, the Plaintiff will continue to suffer monetary damages and deserve judgement against the Defendants TRI, TWM, TWC, and PNB for the sum total of $2,114,190.00.

## COUNT VI

## (CONSTRUCTIVE TRUST)

111. The Plaintiff demands the formation of a Constructive Trust for the assets wrongfully held by Defendants PNB and CITI. The Defendants breached their Fiduciary Duty as described

in the Tri-Party Agreement and MIPSA by wrongfully withholding assets that belong to the Plaintiff despite executed provisions that require financial disbursement. A Constructive Trust is required as the Defendants refused to act upon their Fiduciary Duty.

112.   As a result of this breach, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

113. The Defendants, all their principals and their agents, have breached their Fiduciary Duty as described in the Tri-Party Agreement and MIPSA by wrongfully withholding assets that belong to the Plaintiff despite executed provisions that require financial disbursement. A Constructive Trust is required as the Defendants refuses to act upon their Fiduciary Duty. In the Tri-Party Agreement, PNB *"... irrevocably, absolutely, and unconditionally..."* agrees to pay Hilliard by same day wire transfer, without set off or counterclaim and without deduction for taxes. See, § 2.1 of Tri-Party Agreement. The Defendants have intentionally and maliciously refused to disburse payment to the Plaintiff. As a result of this breach, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

114. The Defendants, all their principals and their agents, have breached their Fiduciary Duty as described in the Tri-Party Agreement and MIPSA by wrongfully withholding assets that belong to the Plaintiff despite executed provisions that require financial disbursement. A Constructive Trust is required as the Defendants refused to act upon their Fiduciary Duty.  In §2.3 of the Tri-Party Agreement, PNB acknowledged that its obligations under the agreement are primary. PNB further agreed that its obligations shall not be affected by any circumstance relating to the payment obligations here under that might otherwise constitute a legal or equitable

discharge of or defense of a guarantor or surety. All suretyship defenses are hereby waived. PNB is precluded from utilizing the Tri-Party agreement as a defense to payment; it cannot claim that its principal, TRI, is not entitled to the funds. Nor can it claim that its principal, Hilliard, is not entitled to the funds due it. As a result of this breach, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

115. The Defendants breached their Fiduciary Duty as described in the Tri-Party Agreement and MIPSA by wrongfully withholding assets that belong to the Plaintiff despite executed provisions that require financial disbursement. The Plaintiff is entitled to 12% of the Seventy-Five Thousand Dollar ($75,000.00) payment made TRI on the closing date. The Plaintiff is entitled to $9,000.00 of this payment.

116. The Defendants breached their Fiduciary Duty as described in the Tri-Party Agreement and MIPSA by wrongfully withholding assets that belong to the Plaintiff despite executed provisions that require financial disbursement. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the One Hundred and Seventy-Five Thousand Dollar ($175,000.00) payment made to TRI following their presentation of Transfer of Evidence. The Plaintiff is entitled to $21,000.00 of this payment.

117. The Defendants breached their Fiduciary Duty as described in the Tri-Party Agreement and MIPSA by wrongfully withholding assets that belong to the Plaintiff despite executed provisions that require financial disbursement. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the twenty-five percent (25%) of the Phase I Adjusted Development Fee, ($9,000,000.00) *plus* (y) reimbursement of certain interconnection costs in an amount equal to Three Hundred Sixty-Eight Thousand and Five Hundred Dollars ($368,500.00)

which was due payable on the date of the closing.  The Plaintiff is entitled to $314,220.00 of this payment.

118. The Defendants breached their Fiduciary Duty as described in the Tri-Party Agreement and MIPSA by wrongfully withholding assets that belong to the Plaintiff despite executed provisions that require financial disbursement. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of the twenty-five percent (25%) of the Phase I Adjustment Development Fee, ($9,000,000.00) which was due and payable within thirty (30) days after the date of the closing. The Plaintiff is entitled to $270,000.00 of this payment.

119. The Defendants breached their Fiduciary Duty as described in the Tri-Party Agreement and MIPSA by wrongfully withholding assets that belong to the Plaintiff despite executed provisions that require financial disbursement. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% of an amount equal to the sum of (x) twenty-five percent (25%) of the Phase I Adjusted Development Fee, ($9,000,000.00) and (y) fifty percent (50%) of the Phase II Development Fee ($8,250,000.00) which was due and paid on the closing date. The Plaintiff is entitled to $765,000.00 of this payment.

120. The Defendants breached their Fiduciary Duty as described in the Tri-Party Agreement and MIPSA by wrongfully withholding assets that belong to the Plaintiff despite executed provisions that require financial disbursement. Pursuant to the executed CSA and MIPSA, the Plaintiff is entitled to 12% an amount equal to the sum of (x) twenty-five percent (25%) of the Phase I Adjusted Development Fee, ($9,000,000.00) and (y) fifty percent (50%) of the Phase II Development Fee ($8,250,000.00) which was due and paid on the date of the closing. The Plaintiff is entitled to $765,000.00 of this payment.

121. The Defendants breached their Fiduciary Duty as described in the Tri-Party Agreement and MIPSA by wrongfully withholding assets that belong to the Plaintiff despite executed provisions that require financial disbursement. In §2.3 of the Tri-Party Agreement, PNB acknowledged that its obligations under the agreement are primary. PNB further agreed that its obligations "shall not be affected by any circumstance relating to the payment obligations here under that might otherwise constitute a legal or equitable discharge of or defense of a guarantor or surety. All suretyship defenses are hereby waived." PNB is precluded from utilizing the Tri-Party agreement as a defense to payment; it cannot claim that its principal, TRI, is not entitled to the funds. As a result of this breach, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

122. The Plaintiff demands the formation of a Constructive Trust for the assets wrongfully held by Defendants PNB and CITI. The Defendants breached their Fiduciary Duty as described in the Tri-Party Agreement and MIPSA by wrongfully withholding assets that belong to the Plaintiff despite executed provisions that require financial disbursement. A Constructive Trust is required as the Defendants refused to act upon their Fiduciary Duty.

123. Further, as a result of this breach, the Plaintiff has suffered monetary damages and deserves judgement against the Defendants for the sum total of $2,114,190.00.

## COUNT VII

## (DECLARATORY RELIEF AGAINST TRI, TWM, TWC, CITI and PNB)

124. All prior paragraphs of this complaint are repeated, re-alleged and incorporated by reference as though set forth herein.

125. A judicial declaration of the parties' stating that the Plaintiff requires payment of all obligations and debts due, owed, and outstanding, by the Defendants is necessary.

126. Accordingly, Plaintiff further seeks a judgment declaring the parties jointly and severally responsible for all obligations and debts due, owed, and outstanding.

## COUNT VIII

### (ACCOUNTING OF TRI RECORDS)

127. All prior paragraphs of this complaint are repeated, re-alleged and incorporated by reference as though set forth herein.

128. Under the circumstances herein, no adequate legal remedy exists to provide an inspection of Defendants TRI books and records; and of any account to which purchase price payments were made by NWO; and Plaintiff invokes the Court's equitable jurisdiction in seeking this accounting.

**WHEREFORE**, Plaintiff demands that a judgment be entered against Defendants for $2,114,190.00 damages, breach of contract, breach of fiduciary duty, unjust enrichment, breach of suretyship, specific performance, attorneys' fees, pre-judgment interest, a constructive trust, an accounting, and all other relief deemed just and proper.

(a) Plaintiff demands the recognition of a constructive trust;

(b) Plaintiff demands that Defendants TWI, TWM, TWC, and PNB be jointly and severally responsible for all remittance due, owed, and outstanding to the Plaintiff;

(c) Plaintiff demands declaratory relief stating that the Plaintiff is due and owed all

37

payments outstanding;

(d) Plaintiff demands an accounting of the books and records of TRI and of any account to

which purchase price payments were made by NOW; and

(e) Plaintiff demands that the bank account beheld by CITI on behalf of PNB be frozen

pending the outcome of this litigation.

Dated:  July 16, 2021
        New York, New York

/s/ A. Manny Alicandro_____

A. Manny Alicandro, Esq. (AA3648)
*Counsel to Plaintiff*
Law Office of A. Manny Alicandro
85 John Street, Suite 10N
New York, NY 10038
(646) 509-3842
manny@alicandrolawoffice.com

/s/ Elio Forcina, Esq.

Elio Forcina Esq.

*Of Counsel to A. Manny Alicandro, Esq.*
Law Office of Elio Forcina
66-85 73rd Place, 2nd Floor
Middle Village, NY 11379
347-528-7099
347-528-7099 Facsimile
forcinalaw@gmail.com